HAMPTON ROADS RY. & ELECTRIC CO. v. NEWPORT NEWS & O. P.
RY. & ELECTRIC CO.

(Circuit Court, E. D. Virginia. June 8, 1904.)

1. FEDERAL COURTS—ANCILLARY JURISDICTION—RECEIVERS.

Where a federal court had acquired jurisdiction of the assets of a street
railway company operating the same through a receiver for the benefit
of creditors, it had ancillary jurisdiction of a petition by the receiver to
restrain a competing street railway company from maintaining gates
across a certain highway, the effect of which would be to practically de-
stroy the value of the property in the hands of the receiver, without re-
gard to the citizenship of the parties.

2. HIGHWAYS—DEDICATION—PRELIMINARY INJUNCTION.

Where two competing street railroads, one of which was being oper-
ated by a receiver appointed by a federal court, terminated at a street
leading to a bathing beach at a summer resort, and it appeared that under
a prior agreement between the owners of land comprising the beach, to
which defendant street railway's predecessor was a party, a certain tri-
angle of land was conveyed and dedicated to the public as an extension
to the street and an approach to the beach, the receiver was entitled
to a preliminary injunction restraining defendant street railway company
from closing such street and grounds, by reason of which passengers over
the receiver's line were prevented from obtaining direct access to the
beach, and were landed in a cul-de-sac.

In Equity.

These causes are now before the court upon the petition of Robert I. Mason,
receiver, filed herein on the 2d day of March, 1904, and upon the supplemental
and ancillary bill subsequently filed on the 26th of March, 1904, the demurrer
and plea of the Newport News & Old Point Railway and Electric Company to
the said first-named petition, and sundry affidavits filed by the parties in sup-
port of their respective contentions arising on said petition and ancillary bill:
it being understood that said plea and demurrer and affidavits are to be read
and considered as well upon the questions raised by the said bill, as also the
said petition; the question at issue between the parties being as to the right
of the Newport News & Old Point Railway Company to erect and maintain a
certain fence and gates on and extending along Bay View avenue to and across
Chesapeake Boulevard, at its intersection with said Bay View avenue at
Buckroe Beach, in the county of Elizabeth City, and extending therefrom to
and into the waters of the Chesapeake Bay. It is charged that the said fence
and gates were erected by the said Newport News Company in the nighttime.
The Newport News Company and the Hampton Roads Company, the affairs
of the last named of which are being administered through receivers appointed
by the court, are the owners and operators of competing lines of electric rail-
way extending from Newport News, Va., to and through the town of Hamp-
ton, to Buckroe Beach, a summer watering place and resort for excursionists,
on Chesapeake Bay, in said Elizabeth City county. Each of said companies
are Virginia corporations, chartered and organized under the laws of the state
of Virginia, and have their separate tracks down what is known as "Bay
View Avenue," to a point near to where said avenue intersects with Chesa-
peake Boulevard, and along the western line of the public grounds and water
front at said place. The Newport News Company is the owner of a 10-acre tract
of land lying at the intersection of the said two avenues, fronting immediately
to the western line of said Chesapeake Boulevard, the tracks of the Newport
News Company being on the southern side of said Bay View avenue, and next
to its 10-acre tract of land, which fronts also on said avenue; and upon its

¶ 1. Supplementary and ancillary proceedings and relief in federal courts,
see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A.
195.

property so situated at the intersection of these two avenues the Newport News Company now and for some years past has maintained a pleasure resort, consisting of hotel, pavilion, and places of amusement and entertainment. In the summer of 1903 the said Hampton Roads Company had secured its right of way from the Buckroe Beach Land Company and the Woodfin heirs, along Bay View avenue and Bay View avenue extended, to the westerly line of Chesapeake Boulevard, and effected its terminus there, making considerable expenditures to that end. Some weeks after this the Newport News Company secured a lease of all their interest in a certain triangular piece of land from the heirs of the late P. T. Woodfin, extending across the intersection of Bay View avenue extended and Chesapeake Boulevard, which land lay between the terminus of the Hampton Roads Company, on the west line of Chesapeake Boulevard, and that portion of Chesapeake Boulevard which lies in front of the property owned by the Newport News Company, and between said terminus of the Hampton Roads Company and the bathing beach or water front in the bill mentioned. After securing the lease referred to, the Newport News Company proceeded in the nighttime to erect the fence and gates aforesaid along said triangle, and extending in and along and intruding upon Bay View avenue. The building of this fence shortly preceded the appointment of the receiver herein, and this proceeding was taken in these causes after the appointment of the receiver herein, with the view of preventing the maintenance of the fence and closing of the gates which, it is claimed, will in effect destroy the property operated by the receivers, since the maintenance of such fence and gates will result in cutting off the passengers by the Hampton Roads Company from reaching the public grounds and bathing beach, and land them, in effect, in a cul-de-sac. The receivers insist that the fence was constructed without authority; that the Newport News Company acquired the pretended right so to do solely for the purpose of destroying the property in their hands; and that the lessors from whom they claim to have leased the same had no title to the land leased, their ancestor, P. T. Woodfin, having heretofore conveyed and dedicated the property sought to be leased to the public as a highway; and that both they and the company leasing from them were fully aware of this fact at the time of the execution of the said lease, and the same was recognized in the deed of lease or quitclaim deed made to the Newport News Company. The Newport News Company, on the other hand, contend that the lease of said property is valid; that they leased said land and erected the fence in question because it was necessary for the orderly conduct of their business at the pleasure resort aforesaid.

R. G. Bickford and W. G. Nelms, for plaintiffs.

S. Gordon Cumming, for defendant.

WADDILL, District Judge (after stating the facts). Two questions are presented for the consideration of the court in these causes: First, as to the jurisdiction of the court in this proceeding; second, if jurisdiction exists, whether upon the facts in the case it appears there was a dedication to the public of the land upon which the fence and gates in question are erected.

1. On the question of jurisdiction, it is manifest that as an original proposition this court would be without jurisdiction to determine the question at issue between the parties in interest, they, one and all, being citizens of the state of Virginia, and that jurisdiction can only be maintained as ancillary and auxiliary to the receivership of the Hampton Roads Railway & Electric Company. That such jurisdiction does exist in this case is quite apparent. It arises upon a proceeding ancillary and auxiliary to the original suit, of which the court clearly had jurisdiction, and made necessary in order that the receiver of the court might protect his possession of the property intrusted to his care and custody, and save the same from threatened injury and

destruction. The property in the custody of the receiver was built at considerable cost, down to its present terminus of Bay View avenue, a public highway near to its intersection with Chesapeake Boulevard. The Newport News & Old Point Railway & Electric Company are the owners of the land immediately to the south of Bay View avenue, and near to their tracks, and passengers transported by the last-named road are admitted through their own private gates direct into their pleasure resort, and thence across Chesapeake Boulevard to the public grounds and water front of Buckroe Beach, on Chesapeake Bay, whereas passengers transported by the former road operated by the receivers have only access to these public grounds and the bathing beach on Chesapeake Bay by means of Chesapeake Boulevard.

To erect gates and a fence across Chesapeake Boulevard is in effect to close up the line operated by the receivers, and make it impracticable to do business at that resort at all; and to permit the same, if Chesapeake Boulevard exists as a public highway, would be virtually for this court to allow the opposition company, by means of closing a public highway lying immediately at the terminus of the two roads, and which is necessary for the use of the company in the hands of the court, to make its business a total loss. The absence of power in the court to prevent this wrong would be to visit upon litigants the loss of their estate, by seeking the aid of a court of equity to administer their affairs when insolvent; and no court having general equity jurisdiction, and the power to administer estates of persons insolvent and incapacitated to protect themselves, should be dependent upon or required to seek the aid of any other tribunal to prevent such injustice to litigants before it. The authorities are ample to maintain this position, and to show that the jurisdiction of the court in this class of cases in no manner depends upon the citizenship of the parties to the cause. 1 Foster, Fed. Pro. § 249; Davis v. Gray, 16 Wall. 218, 219, 21 L. Ed. 447; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Pacific R. R. Co. v. Mo. Pac. R. R. Co., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498; In re Tyler, 149 U. S. 181, 13 Sup. Ct. 785, 37 L. Ed. 689; Root v. Woolworth, 150 U. S. 413, 14 Sup. Ct. 136, 37 L. Ed. 1123; White v. Ewing, 159 U. S. 39, 15 Sup. Ct. 1018, 40 L. Ed. 67; Carpenter v. Northern Pacific R. R. Co. (C. C.) 75 Fed. 851.

Counsel for the Newport News & Old Point Railway & Electric Company have referred the court to the case of Wood v. N. Y. & N. E. R. R. (C. C.) 61 Fed. 236—a decision by Judge Colt, of the First Circuit. This is an interesting case, and bears incidentally with the one under consideration. It was there sought by the receivers of a railroad company to enjoin in the receivership proceedings another railroad from making an alleged discrimination in rates against the road operated by the receivers. In a word, it was an intent to control the administration of the affairs of an independent railroad in the receivership suit. There was no charge of actual or constructive interference with the property under the control of the receivers, or that they did not have an equal right with the company sought to be restrained; that is to say, to the equal use of the public highway.

2. Coming to the question of the dedication of the property at the

intersection of Bay View avenue and Chesapeake Boulevard, it seems that prior to the building of either of the street car lines, and at the time of the proposed extension of the Newport News & Old Point Railway & Electric Company to Buckroe Beach, down Bay View avenue, the desirability of laying off streets and avenues was duly considered and agreed on between the owners of the property, including P. T. Woodfin, on one hand, and the owners of the predecessor company, the said Newport News & Old Point Railway & Electric Company, and certain land companies, on the other, and that in extension of said Bay View avenue, as it now exists, certain triangles on either side of the avenue were left, whereby, on the one hand, deeds had to be made to the said Woodfin of land not theretofore owned by him, but thrown with his land by the opening of said avenue, and he was required to convey certain triangles of his own land, by reason of the cutting off of the same, in the extension of said avenue.   Proper deeds were regularly made to the said T. P. Woodfin for the triangles to be conveyed to him by the land companies, and he regularly conveyed one of the triangles for which he was to make deeds, which deed is duly recorded; but as to the triangle now in question, extending from the water front across Chesapeake Boulevard to the westerly line thereof, and to and across Bay View avenue extended, there was considerable delay in making the deed, by reason of certain reservations that said Woodfin desired to make in connection with the extension of the line from the water front to Chesapeake Boulevard, and to and along Bay View avenue and Bay View avenue extended, and the manner of the maintenance of the street car line down said avenue, as affecting his other property.   As to the execution of this last-mentioned deed, voluminous affidavits have been filed by the parties, respectively; and the conclusion reached by the court is that this later deed was executed by Col. Woodfin, and delivered in his lifetime to the counsel for the predecessor of the said Newport News & Old Point Railway & Electric Company, and that, so far as the property at the intersection of Chesapeake Boulevard and Bay View avenue is concerned, the same, as well as all the property included in triangle forming part of said Bay View avenue and Chesapeake Boulevard, was by said deed dedicated to the public, and, as a consequence thereof, and because of the dedication of Bay View avenue by the land company, which formerly owned the same, said Bay View avenue to the southward of Woodfin's triangle has been used as a public thoroughfare by the public and by the Newport News & Old Point Railway & Electric Company for some years past, as well as the Hampton Roads Railway & Electric Company, since the extension of its lines, and that said triangle, as it affects the said two streets to the eastward to the west line of Chesapeake Boulevard, has been regularly conveyed and dedicated to and accepted by the public.   The heirs of Col. Woodfin have no right or interest whatever therein, and no lease made by them, or attempted to be made by them, of said streets, or either of them, or of any of the property formerly belonging to P. T. Woodfin, and lying to the southward of the north line of Bay View avenue extended into Chesapeake Bay, is in any respect valid or binding upon the public, or upon any person entitled to the use of said streets.   Certain it is,

the receivers on this question have made out a prima facie case, entitling them to an injunction preventing the closing of said Chesapeake Boulevard and the obstruction of said Bay View avenue; and the case can hereafter be heard and determined upon the merits, as to the making of said deed, and setting up the same in this cause, all parties in interest being before the court.

The relief here sought is necessary as well for the Newport News & Old Point Company as the Hampton Roads Company, since both are without title to the right of way for their tracks for a considerable distance upon and over Bay View avenue, if the deed from Woodfin has never been executed. Indeed, whether the deed was ever executed or not by Col. Woodfin, if he received, upon the faith of making the same, a conveyance of the triangles exchanged for his, any party in interest could require the specific performance of the undertaking to convey on his part; the Hampton Roads Company being an occupant of part of Bay View avenue as a public highway, and by permit of the land companies, as well as that of the Woodfin heirs precedent to said lease, would itself be entitled to seek this relief, as would also any of the land companies affected by the failure to make the conveyance.

It follows from what has been said that an injunction should be awarded, enjoining and commanding the removal of the fence in the bill and proceedings mentioned, and, pending such removal, restraining defendants from closing said gates.

On the question of jurisdiction, see, also, Texas & Pacific Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Porter v. Labin, 149 U. S. 479, 13 Sup. Ct. 1008, 37 L. Ed. 815; Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Price v. Abbott (C. C.) 17 Fed. 506; Armstrong v. Trautman (C. C.) 36 Fed. 275; Peck v. Elliott, 79 Fed. 10, 24 C. C. A. 425, 38 L. R. A. 616.