### WILSON et al. v. KANSAS CITY POWER & LIGHT CO.

(District Court, W. D. Missouri, W. D. June, 1924.)

No. 5823.

1. Courts ⟨⟩264(3)—Federal court has jurisdiction of ancillary suit by receiver, without regard to citizenship of parties.

Federal court has jurisdiction of ancillary suit by its receiver, without regard to citizenship of parties or amount involved.

2. Courts ⟨⟩264(3)—Any suit by receiver in winding up corporation ancillary.

Any suit by federal receiver in winding up affairs of corporation, whether for collection of its assets or for defense of property rights, is ancillary to main suit, and cognizable in federal court, regardless of citizenship of parties or amount in controversy.

3. Courts ⟨⟩264(3)—Suit by federal receivers on contract entered into by themselves ancillary, and federal court had jurisdiction.

A suit by receivers appointed by federal court on a contract entered into by them in administration of estate is ancillary, and federal court has jurisdiction, regardless of citizenship or amount in controversy.

In Equity. Suit by Francis M. Wilson and Fred W. Fleming, receivers of the Kansas City Railways Company, against the Kansas City Power & Light Company. On motion to dismiss. Motion overruled.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jules Rosenberger, of Kansas City, Mo., for plaintiffs.

John H. Lucas and Ludwick Graves, both of Kansas City, Mo., for defendant.

VAN VALKENBURGH, District Judge. This suit is brought by plaintiffs to recover for alleged breach of contract entered into between receivers and defendant. The petition alleges that because of diversity of citizenship a creditors' bill was filed in this court, praying the appointment of receivers for the Railways Company, and that the plaintiffs were duly appointed thereunder to take charge of all the assets, properties, and rights of the Railways Company, with the duty and power to continue the business and operate the electric railway system and other property of that company, to exercise all such powers as might be necessary and convenient in the proper conduct of the business, to manage the properties of the company in such manner as in the judgment of said receivers would produce the most satisfactory results, consistent with the discharge of the public duties imposed upon them, to collect and receive all income from the properties, all debts due and revenue to which the Railways Company might be entitled, and to institute and prosecute all suits which might be necessary for the protection of said Railways Company or the receivership estate.

It was further alleged that, embraced in the property taken into possession and control of this court by and through plaintiffs as receivers, were and are the power plant known as the Missouri river power house and electrical energy producing and distributing facilities of the Railways Company, which were originally designed and constructed, among other things, for the production and sale of electrical current for light and power purposes to the public generally in Kansas City and vicinity and to interurban electrical railway systems; that the receivers, and prior to their appointment, the Railways Company, in order to avail themselves of the surplus energy producing capacity of said power plant and facilities, and to derive necessary revenue therefrom, were engaged in the business of producing and selling, under proper contracts, such electrical energy as was not actually necessary to the operation of the street railway system of the Railways Company; that at all such times the defendant, as a public utility, was engaged in the business of selling and distributing electric light and power to the public in Kansas City, Mo., and vicinity, and during part of the time was wholly without an adequate power plant or electrical energy producing facilities, and purchased from the Railways Company, in whole or in main, the electrical energy sold by defendant to its customers; that because of inability to furnish uninterrupted service to its patrons in case of total or partial breakdown of its power plant or facilities, the defendant, to assure itself a means of obtaining from the plaintiffs a prompt supply of electrical energy in case of such breakdown, entered into negotiations with plaintiffs as to the terms upon which plaintiffs would constantly hold themselves in readiness to furnish to defendant, from said power plant in the custody of plaintiffs, the electrical energy that might be required; that on May 6, 1921, at the special instance and request of defendant, plaintiffs entered into the contract

in question to supply defendant such electrical energy as might become necessary; that in consideration of the premises defendant agreed to pay plaintiffs the sum of $10,000 monthly for a period of 12 months from the date of said contract; that plaintiffs at all times during the term of said contract, at great cost, expense, inconvenience, and damage to said receivership estate, held and kept themselves in readiness to perform said contract, and were at all times ready, able, and willing to perform the same; that this required that plaintiffs should make changes in and adapt their plant, equipment, facilities, and labor force to the performance of said contract, and to operate their said power plant at a capacity greatly in excess of that required for their own needs in the operation of said street railway system and the fulfillment of their existing contracts with others, at heavy expense and loss to said receivership; that thereby plaintiffs were disabled and prevented from selling or using the electric energy received, held, and set aside for defendant's use, as aforesaid; that defendant has wholly failed and refused, and still fails and refuses, to make payment to plaintiffs, in whole or in part, of the sums stipulated in the contract.

[1-3] Defendant moves to dismiss on the ground that both parties are residents of the county of Jackson and state of Missouri, that no federal question is involved, and that this court, as a federal court, is without jurisdiction to hear and determine the controversy. Plaintiffs have filed their petition as ancillary to that under which the receivers were appointed. It is conceded that a federal court has jurisdiction of an ancillary suit by its receiver, without regard to the citizenship of the parties or the amount involved, and that any suit by a receiver in the course of the winding up of a corporation, whether for the collection of its assets or for the defense of its property rights, is to be regarded as ancillary to the main suit, and as cognizable in the Circuit Court, regardless either of the citizenship of the parties or of the amount in controversy. The question is whether this suit falls within that class.

It is the contention of the defendant that this action does not involve the collection of an asset of the corporation in a necessary sense, because the claim sued for is that of the receivers themselves, originating after the receivership was instituted; that it does not involve a defense of the property rights of the corporation, because the property of the corporation is neither assailed nor threatened. It is insisted that this is just an ordinary action at law between citizens of the same state, and therefore does not fall within the jurisdiction of the federal court under the statutes conferring such jurisdiction. It must be conceded that the question presented is not entirely free from difficulty. The principle involved is thus stated in High on Receivers (4th Ed.) p. 87, par. 60a:

"Where a receiver has been appointed by a federal court in a cause which properly comes within the jurisdiction of that court, all actions brought by the receiver for the collection and preservation of assets, or for the protection of the property in his custody, and all other actions which may become necessary for the proper administration of the estate under his control are to be regarded as ancillary to the main cause, and are therefore not dependent upon diversity of citizenship or the amount involved, and accordingly such suits may be instituted and maintained in the federal courts, regardless of the citizenship of the parties or the amount in controversy."

Mr. Foster (4th Edition, vol. 1, p. 85) dealt with the subject in the following language:

"The Circuit Courts also have jurisdiction, irrespective of the value of the matter in dispute, of every suit brought by a receiver appointed by a Circuit Court of the United States, since such a case is ancillary to that in which he was appointed."

"After a federal court has appointed a receiver, it has ancillary jurisdiction over all suits brought by him irrespective of the citizenship of the parties and of the amount involved." Id. 195.

"Since a proceeding to collect assets of an estate, whether brought in personam to recover damages, or in rem, as by replevin or ejectment, is ancillary to the principal suit, a receiver appointed by a federal court can bring a suit for that purpose in the court of his appointment irrespective of the citizenship of the parties or the amount involved." Id. 821.

The jurisdiction of the federal court in such cases is thus defined by Mr. Michie in his Encyclopedia of United States Supreme Court Reports, vol. 10, p. 560:

"It is for the appointing court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere."

The importance of the question presented has led the court to make a considerable examination of the cases in addition to those cited in the briefs of counsel. Plaintiffs rely strongly upon the case of Carey v. McMillan (C. C. A. Eighth Circuit) 289 Fed. 380, in which it is held that a federal court has jurisdiction of an ancillary suit by its receiver, without regard to the citizenship of the parties or the amount involved, and that such suit may be legal, as in aid of or affecting the equitable suit. In that case the action was brought to recover upon notes given by stockholders to the corporation, before receivership, in part payment of their written contracts of subscription. They were therefore assets of the estate before it came into the hands of the receiver. The holding in that case is predicated upon the decision of the Supreme Court in White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67, which is regarded as the leading case, although there are many decisions to the same effect. In White v. Ewing, supra, Mr. Justice Brown said:

"Any suit by or against such receiver, in the course of the winding up of such corporation, whether for the collection of its assets or for the defense of its property rights, must be regarded as ancillary to the main suit, and as cognizable in the Circuit Court, regardless either of the citizenship of the parties or of the amount in controversy."

The defendants therein were charged to be severally indebted upon notes given for lots of land purchased from the company prior to the receivership. Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815, was a suit against the officers of a corporation for fraudulent misappropriation of its property. Mr. Justice Gray said:

"When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate, the possession of the receiver is the possession of the court, and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. * * * It is for that court, in its discretion, to decide wheth-

er it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere."

The doctrine is further stated in Pope v. Louisville, New Albany, etc., Railway, 173 U. S. 573, 19 Sup. Ct. 500, 43 L. Ed. 814:

"When an action or suit is commenced by a receiver, appointed by a Circuit Court, to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the Circuit Court as a court of the United States is concerned, and we have repeatedly held that jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction on which the main suit rested."

The Circuit Court of Appeals, Second Circuit, in the case of Hume v. City of New York, 255 Fed. 488, 166 C. C. A. 564, holds:

"An action by a general receiver appointed by a federal court for the property of an insolvent corporation, and to collect and preserve its assets. on a chose in action in favor of the corporation, is ancillary to the original suit and within the jurisdiction of the court, regardless of citizenship of parties, although the action is one in tort for damages against a municipal corporation."

In that case the order appointing the receivers provided:

"That the receivers carry on the business of the corporation, preserve and advantageously convert into money the property, assets, and effects of the corporation, collect any debt or demand. appear in and defend any and all suits at law or in equity then pending against the corporation, or do any and all lawful acts and things usual in the premises which in their judgment shall be best calculated to enable them to collect and preserve the property and assets of the corporation."

The action in general was to recover damages to the traction company, sustained because of delays and interferences on the part of the city in carrying out its contract obligations arising through the franchise obtained from the traction company.

In Brookfield et al. v. Hecker et al., 118 Fed. 942, the Circuit Court held, under the authority of Porter v. Sabin, supra, that:

"A federal court, which has appointed ancillary receivers for the property of a corporation within its jurisdiction. has jurisdiction of a suit by such receivers in their own name, to protect the business carried on by them from injury by unfair competition, also carried on within the state, without regard to the citizenship of the parties."

In Bowman v. Harris et al. (C. C.) 95 Fed. 917. Judge Rogers, of the Western District of Arkansas, said:

"A court of equity, which has undertaken to administer the estate of an insolvent corporation, and has taken possession of all its property through a receiver, may, in its discretion, reserve to itself the determination of all claims of or against the receiver," irrespective of citizenship or amount involved.

Other cases bearing upon the question, but not so pertinent, because of the situation presented are Connor v. Alligator Lumber Co. (C. C.) 98 Fed. 155; Alexander et al. v. Southern Home Building & Loan Ass'n (C. C.) 120 Fed. 963; Hampton Roads Ry. & Elec. Co. v. Newport News & O. P. Ry. & Elec. Co. (C. C.) 131 Fed. 534; Gunby v. Armstrong, 133 Fed. 417, 66 C. C. A. 627; Robinson v. Mutual Reserve Life Ins. Co. (C. C.) 175 Fed. 629.

Upon this motion to dismiss only the question of jurisdiction can be considered. To sustain the position of the plaintiffs it is not claimed, nor is it necessary to decide, that the jurisdiction of the federal court is exclusive. The suggestion of counsel for defendant that the assumption of jurisdiction involves the impropriety of the same court passing upon the merits of a contract entered into by itself through its receiver is untenable. The court passes upon all claims for or against the estate arising in the administration of that estate, but in so doing it is actuated by no personal interest; the object being merely to liquidate the assets and distribute them to those to whom they should properly go. As stated at the outset, the solution of the question presented is a nice one and not free from difficulty. It is true that this suit is not brought for the collection of a claim which existed prior to the receivership, nor for the defense of property sought to be detached from the estate in the possession of the receivers; but it is a claim arising out of the administration of the estate and the conversion and preservation of its assets in the course of continuing business under the express order and policy of the court appointing the receivers. In such sense, it is a suit brought to attain the objects and purposes of the main action, which is the realization of the most substantial fund practicable for distribution to those entitled thereto. It is no strained construction to hold that it comes within the class of cases recognized by the courts as falling within the jurisdiction of the federal court appointing the receiver.

It is obvious that the trend of decision is toward permitting the court appointing a receiver to resolve, as far as practicable, all questions and controversies affecting the estate of which it has assumed control and custody, to the end that both liquidation and distribution may be better co-ordinated. The statements of doctrine by courts of last resort have been so broad in terms that counsel have, with reason, adopted the liberal construction indicated. If the language employed in the decisions has been too broad, and should be limited, it is desirable that that should be done by the court of last resort, rather than by this court of inferior jurisdiction.

It is my judgment, therefore, that the motion to dismiss should be overruled.