13046

GIBERT *ET AL.* v. GLENN *ET AL.*

(156 S. E., 325)

138

148

150

*Mr. James H. Glenn,* for appellant Glenn, Executor,

*Messrs. J. H. Marion, H. C. Cox, McDonald & Macaulay, Gaston, Hamilton & Gaston,* for respondents,

December 30, 1930.

Opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action by the plaintiff Mary Jane Waters Gibert, daughter of James A. Waters, deceased, and her five minor children against the executor of the will of Nancy M. Waters and the administratrix of the estate of Samuel E. McFadden, deceased, who were the executrix and executor of the will of James A. Waters, and trustees under it of a certain fund out of his estate, allotted to Mary J. W. Gibert, subject to certain trusts, for the recovery of $2,825.-00, with interest on $1,425.00 of said sum from October 23, 1925, at 7 per cent. per annum, payable annually, and with interest on $1,400.00 of said sum from May 20, 1924, at 7 per cent. per annum, payable annually.

The action appears to have been treated as an action at law, and will be so considered, although it might well have been considered as one in equity for an accounting of the trust fund.

The case was called first before his Honor, Judge Ramage, then acting as special Judge (now Circuit Judge), where the defendants demurred to the complaint upon the ground that the children of Mrs. Gibert had no interest in the case. The demurrer was overruled by Judge Ramage, and his order is the basis of an exception. It may

be dismissed summarily, for the reason that multiplicity of parties is no valid ground of demurrer.

The case was later tried before his Honor, Judge Johnson and a jury; the trial resulted in a verdict in favor of the plaintiffs against both defendants for $3,466.15, upon which judgment has been entered, and from which the defendant J. L. Glenn, executor of the will of Nancy M. Waters, has alone appealed.

The undisputed facts are these:

James A. Waters died May 12, 1909, leaving a widow, Nancy M. Waters, and three children by a former marriage, the plaintiff Mary Jane Waters, Brice McD. Waters, and Chalmers E. Waters; the plaintiff at that time was unmarried, but at some time during the year, prior to May, 1910, she was married to J. B. Gibert.

James A. Waters left a will which was probated on May 15, 1909, in the Court of Probate of Chester County.

Items 9 and 10 of the will are as follows:

"Item Nine: All of the rest, residue and remainder of my estate, real, personal, and mixed, I hereby direct my executors, hereinafter named to convert into money at the earliest practicable moment. When the same has been converted into money, I hereby give, devise, and bequeath the same, one-fourth thereof to my wife, Nancy M. Waters; one-fourth thereof to my son, Brice McD. Waters; one-fourth thereof to my son, Chalmers E. Waters, and one-fourth thereof to my daughter, Mary Jane Waters.

"The one-fourth thereof, however, hereby bequeathed unto my daughter, Mary Jane Waters, is to be held by my personal representatives, hereinafter named, in trust, they to invest the same on good collateral (real estate mortgages preferred), and to pay the interest or income from said mortgages or collateral annually to my said daughter, Mary Jane Waters, for her support and maintenance. Should my daughter, Mary Jane Waters marry, and should she marry a worthy and deserving man, who is a capable business man

in the opinion of my personal representatives hereinafter named; then they, in their discretion, are to have the right to turn over unto the said Mary Jane Waters the corpus or the principal of the money so left her in the manner above named, to be handled by my personal representatives as hereinabove stated.

"Should my said daughter, Mary Jane Waters, however, not marry a man who is provident, frugal, and competent to handle money, then I direct my personal representatives, hereinabove named, as Trustees for my said daughter, Mary Jane Waters, to invest said money as hereinabove stated, paying over to her only the income therefrom.

"Should my daughter, Mary Jane Waters die without children surviving her, and should the moneys hereby bequeathed to her in this paragraph not be turned over to her before her death, then at her death my personal representatives shall divide said money in equal shares among the children of my son, Brice McD. Waters.

"Item Ten: I hereby nominate, constitute, and appoint my wife, Nancy M. Waters, the Executrix, and my attorney, Saml. E. McFadden, the Executor, of this my last Will and Testament, hereby requesting said Executor to co-operate jointly with my Executrix in the administration and execution of this my last Will and Testament, and that he do any and all things looking forward to the best interests of my estate, and of my wishes, as hereinabove expressed."

Nancy M. Waters and S. E. McFadden, the attorney of the testator, were appointed executrix and executor of the will. They duly qualified and jointly entered upon the discharge of the duties of their trust. Thereafter the following sums of money were paid to Mrs. Gibert, prior to the final settlement, May 26, 1910:

June 12, 1909 ............................$ 40.00
Dec. 4, 1909 ................................ 25.00
Feb. 5, 1910 ............................... 200.00

Mch. 3, 1910 ............................... 75.00
May 20, 1910 .............................. 50.38
_____
Total ................................ $390.38

On May 16, 1910, preparatory to a final settlement, the executrix and the executor filed a final return of the estate, from which it appeared that the distributive share of Mrs. Gibert was $3,279.97; and on the same day they took from Mrs. Gibert a receipt as follows:

"$3,279.98                    Chester, S. C., May 16, 1910.

"Received this day of Nancy M. Waters, Executrix, and Saml. E. McFadden, Executor, respectively, of the estate of James A. Waters, deceased, Thirty-Two Hundred Seventy-Nine and 98/100 Dollars, in full settlement of my distributive share in the final distribution and settlement of the estate of James A. Waters, deceased, by his said personal representatives, as shown by the first and final return of said Nancy M. Waters, Executrix, and Saml. E. McFadden, Executor, of the estate of said James A. Waters, deceased.

"Witness my hand and seal, the day and date hereinabove written.

M. J. Waters Gibert."

"Witness:

"Mary G. Sledge."

On May 26, 1910, the personal representatives, with receipts from all of the legatees, had a final settlement in the Court of Probate, and received final discharge.

There is evidence tending to show that, notwithstanding this receipt, Mrs. Gibert received no part of said fund except the sum of $390.38 previously paid to her as above stated; that the receipt was signed in the office of McFadden at a meeting of all the parties interested in the estate; that at the time of the signing of the receipt no money or securities of any kind were turned over to Mrs. Gibert; that on the occasion of that meeting Mrs. Waters stated that she

wanted twelve months' time to think about it before she turned over Mrs. Gibert's money.

The contention of the defendants was that if not actually paid to her, it was constructively so paid by reason of her allowing the fund to remain in the hands of McFadden as her agent for investment, and that in this way the duties of Mrs. Waters and McFadden, as personal representatives and as trustees were fully discharged; that thereafter the fund was held by McFadden as the agent of Mrs. Gibert, and that his estate was alone responsible for it, which it is admitted was wasted and entirely lost by McFadden.

A circumstance relied upon to sustain this theory is the retention of the fund by McFadden alone, and the payment by him to Mrs. Gibert of the interest regularly nearly up to the time of his death. Opposed to this theory is the evidence tending to show that Mrs. Waters considered the fund as still trust funds, and not only subject to but actually under her control by the terms of the will; that she constantly and consistently refused to turn the fund over to Mrs. Gibert, exercising the discretion vested in her by the will to determine whether it was safe to do so on account of the ability of her husband. In fact, it was entirely proper under the terms of the will for her to withhold payment to Mrs. Gibert until she and McFadden became satisfied that the man she had so recently married (about a month previously) was "provident, frugal and competent to handle money"; a strong verification of the statement of Mrs. Gibert that no money passed with the receipt.

It is assumed that further payment of $64.60 was made to Mrs. Gibert in order to balance the account:

Share ....................................$3,279.98
Payments ................................... 390.38
                                            _____
                                            $2,889.60
Trust fund ............................... 2,825.00
                                            _____
  Balance ....:..............................$   64.60

The salient issues in the case were whether Mrs. Gibert actually received the sum of money indicated by her receipt, and, if so, whether she committed it to McFadden as her agent for investment. Those issues were fairly presented by the presiding Judge to the jury. Their verdict in favor of the plaintiffs necessarily means that she did not do either of these things, but that the sum due her remained in the hands of the personal representatives as trustees under the will. There was evidence tending to show that both personal representatives participated in the custody and control of the fund, and if so they must be held jointly liable for its loss.

The question to be considered is whether upon the trial of the case there were such errors as are assigned sufficient to require a reversal of the judgment. It is tedious, though necessary, to consider the several assignments of error contained in the seventeen exceptions filed by the appellant.

Exceptions 1 and 2 have been considered hereinbefore and are overruled.

Exception 3 complains that Brice Waters was allowed to testify to statements made by Nancy M. Waters as to the disposition of the legacy of Mrs. Gibert; the ground of the alleged error is that the witness was the father of the children who were named as contingent legatees; that the admission of his testimony was a violation of Section 708 of the Code. The exception is objectionable in not setting forth the testimony objected to. But, aside from this, the witness, as the father of the contingent legatees, had no such interest in the result of the suit as would bar him from testifying to a communication between him and Mrs. Waters who was dead at the time of the examination. *Sullivan v. Latimer*, 38 S. C., 158, 17 S. E., 701.

Exception 4 is objectionable in not setting forth the testimony objected to. The Court cannot be expected to grope through the record to find testimony that

would answer the general statement in an exception. Nevertheless, we have gone through the testimony of Mrs. Chalmers and find nothing in it upon this particular point further than tending to show that, notwithstanding the receipt of Mrs. Gibert and the final discharge of May 26, 1910, Mrs. Waters considered the money as still in the hands of the personal representatives as trustees, a vital issue in the controversy. Why that could not be established by parol we do not comprehend.

Exception 5. The same observations are applicable to this exception as above made in reference to Exception 4.

Exception 6. The same.

Exception 7. The action was against the estate of McFadden as well as against the estate of Mrs. Waters. The statement was certainly admissible against the estate of McFadden even if made to the husband of Mrs. Gibert, who doubtless was acting for her, or if made to an entirely disinterested person. There was evidence tending to show that Mrs. Waters participated in the continuing trust by both herself and McFadden, and his declarations in the common enterprise would have been admissible against both.

Exception 8. For the same reason the letters of McFadden were admissible.

Exception 9 will not be considered, for the reason that the objectionable testimony is not set forth in the exception.

Exception 10. The same.

Exception 11. It does not seem possible that the remark made by the presiding Judge was in the least calculated to convey to the jury his impression of the vital issue of the case, whether the personal representatives continued to hold the fund as a trust fund under the will. He was not charging the jury, but was discussing the admissibility of the McFadden letter, which indicates a continuance of the trust, and in connection stated that there

was evidence tending to show that the personal representatives wished further time to decide whether the fund should be turned over to Mrs. Gibert. There was abundant evidence of this, undisputed, and we see no error in his Honor's referring to the fact as justification for the admission of the McFadden letter.

Exception 12. The testimony bore directly upon the vital issue of a continuance of the trust, and was therefore admissible.

Exception 13 will not be considered, for the reason that the objectionable evidence is not set forth in the exception.

Exception 14. Taken in connection with the very full and clear charge of the Judge which is set out below, there could have been no apprehension on the part of the jury that his Honor assumed the existence of the very material issue clearly presented. He said:

"It is conceded by all parties that Nancy M. Waters and Samuel E. McFadden were appointed executors of the will of James A. Waters, deceased, and that they did qualify as executors of that will. No question about that, as I take it, from any circumstances in the case. The plaintiffs in the case go further, however. They state they not only did that, but they also became trustees under that will. The defendants say, 'No, we didn't; we became executors or qualified as executors, without accepting the trust imposed upon us by virtue of the executorship or in the trusteeship.' And therefore, one of the first questions for you to answer is, Who is right? Whom does the evidence and the law say is right about it? Did Mrs. Nancy Waters and Samuel McFadden accept the trusteeship as well as the executorship in this case? If you answer that question 'No,' if you conclude from the evidence that they were simply executors, why you wouldn't have to pursue that angle of it, certainly so far as the defendant Glenn is concerned, or as to either of them, as far as that is concerned. But if you should con-

clude that they did accept the trusteeship, both of them, then you would go a step further and inquire—Did Mrs. Waters, either as co-trustee of McFadden, constitute him her agent, and did the plaintiff suffer, as the result of any act of Mc-Fadden's? Or, second, if she didn't create him her agent, did she, Mrs. Waters, after accepting the trusteeship, if you should conclude that she did accept it, did she, by her act—by any act of hers, place the property in question, or the fund in question, in the sole possession and control of her co-trustee, and did the plaintiff, as a result thereof, lose? If she did, Mrs. Waters would be responsible for it."

Exception 15. We see no error in the charge excepted to.

Exceptions 16 and 17 are fully covered by what has been said.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. ACTING ASSOCIATE JUSTICE GRAYDON dissents.