## GIBSON v. VINTON et al.

Circuit Court of Appeals, Eighth Circuit.
July 28, 1927.

No. 7738.

**1. Courts ☞264(3)—Federal court has jurisdiction of ancillary suit by its receiver, irrespective of parties' citizenship or amounts involved.**

Federal court has jurisdiction of an ancillary suit by its receiver, without regard to citizenship of the parties or amounts involved.

**2. Abatement and revival ☞45—Receiver's suit to wind up affairs of corporation held not abated by decree directing return of property to corporation.**

A suit brought by a receiver of a federal court in winding up affairs of the receivership, or for the collection of assets, was not abated by a decree directing return of the property held by the receiver to defendant corporation, where court retained jurisdiction of the suit by the express terms of the decree.

**3. Sales ☞202(6)—Goods shipped, consigned to seller, with draft attached to bill of lading, remain property of seller until draft is paid, as regards liability for loss.**

Where a seller ships goods consigned to himself, with sight draft for the price attached to bill of lading, he retains title and possession until draft is paid, and any loss from damage to the goods before that time falls on him.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action at law by T. O. Vinton, receiver, and another, against John K. Gibson. Judgment for plaintiffs, and defendant brings error. Affirmed.

Basil Baker, of Jonesboro, Ark., and G. M. Gibson, of Walnut Ridge, Ark., for plaintiff in error.

R. G. Brown, of Memphis, Tenn., for defendants in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

MOLYNEAUX, District Judge. This action was brought by T. O. Vinton, as receiver for the National Cottonseed Products Corporation, against the defendant, John K. Gibson, to recover damages in the sum of $1,710.71, on account of the damaged condition of two cars of cottonseed shipped under conditions hereinafter stated.

The National Cottonseed Products Corporation, hereinafter referred to as "National," was placed in the hands of four receivers in the federal courts for the Western district of Tennessee and the Eastern district of Arkansas, September 16, 1925. T. O. Vinton, succeeding the four receivers, was appointed receiver of the National on the 7th day of October, 1925, by the District Court of the United States for the Western District of Tennessee, Western Division, and a similar order was entered in the District Court of the United States for the Eastern District of Arkansas, Little Rock Division. Vinton qualified in accordance with the orders of said court. He, as such receiver, brought this action. At the time the receivers were appointed on the 16th day of September, 1925, John K. Gibson, defendant, was indebted to the corporation in the sum of $5,000, evidenced by note.

In September, 1925, A. G. Pattison, manager of the Roberts Cotton Oil Mill, located at Jonesboro, Ark., one of the properties of the National, made a verbal contract with Gibson to ship five cars of cottonseed to the Roberts mill at a price of $40 per ton, f. o. b., the proceeds to be credited upon said note. Written confirmation of this purchase was drawn up by Pattison and forwarded to Gibson, who executed the same on September 21st, 1925. After confirmation was sent to Gibson, a clause was added as follows:

"This contract is accepted with the understanding that should the Roberts Cotton Oil Company fail to get into position to operate they will take these seed at the Dixie mill in Memphis, and that I will be protected from all loss or damage on account of receivership which these two mills are contemplated to be operated under." Gibson testified that he had a telephone conversation with James

Roberts, manager of the Dixie mill, as a result of which the memorandum was placed on the confirmation. This conversation took place September 22d, as shown by Gibson's letter of that date. On that date Gibson shipped a car of seed (not one of the five embraced in the contract sued upon), the shipment being made to shipper's order, sight draft, bill of lading attached.

September 24th, Roberts wrote to Gibson as follows:

"Memphis, Tenn., September 24, 1925.

"Jno. K. Gibson, Lauratown, Tenn. [should be Arkansas]—Dear Sir: We have yours of the 22d, and have just talked to you over the phone. You may feel assured that I am going to take care of your interests. I had the receivers write you a letter yesterday stating that the cars you care to ship in *on open bill of lading to us* would be applied against your note now held at Jonesboro, so that it would relieve any undue anxiety on your part that the funds would not reach the proper source. I appreciate your friendship a good deal more than to get you in trouble over a shipment of cottonseed, and therefore, should I see anything coming up that would hinder me from carrying out what I say, I would certainly not allow your seed to come in to this plant and be unloaded.

"Yours truly, James Roberts,
"Manager."

Gibson's answer to this letter is hereinafter referred to.

October 1, 1925, Gibson shipped two cars of cottonseed to the Dixie mill in Memphis, car S. L. S. F. No. 36213, which reached destination October 8th, and car K. C. F. S. & M., No. 43010, the contents of which reached Memphis in two cars on October 11th. These cars were consigned by Gibson to his own order, with sight draft attached to bill of lading. Neither of the bills of lading were indorsed or assigned by the shipper.

Defendant's proof, which is uncontradicted, shows that the seed was in good condition when it left Portia. Plaintiff's proof, which is uncontradicted, shows that all of the seed was in very bad condition when the cars reached Memphis.

There appears to be no dispute as to the amount of the damages. A jury returned a verdict by the direction of the court for the amount prayed for in the complaint. The original contract for shipment of the seed was made with the four receivers who were first appointed, and who were succeeded by T. O. Vinton. The seed were shipped during the incumbency of the four receivers, and

reached Memphis after the appointment of Vinton and the discharge of the four receivers. The receiver paid for the seed before it reached Memphis and before he discovered that it was damaged. He, as such receiver, sued the shipper in the United States court by order of the court. The amount involved was less than $3,000.

On June 23, 1926, long after this action was brought, a decree was entered in said receivership suit in the District Court for the Western District of the Western Division of Tennessee, in which it was decreed that the receiver should turn over to the National Cottonseed Products Corporation and convey to it all of the property of said corporation held by the receiver, and required the receiver to relinquish and turn over to said corporation the management and control of the business and affairs of said corporation. The court, however, did not discharge the receiver, and reserved jurisdiction of this suit.

Again, section 9 provides for the corporation to be "substituted" for the receiver in all suits where he was the defendant and to be "joined" with him in all suits where he was the plaintiff. The receiver was not discharged. Accordingly the corporation was, on the motion of the receiver, made a party plaintiff with the receiver by order of the court.

On November 23, 1926, the appellant, Gibson, moved the lower court to dismiss the action assigning as grounds therefor, the provision of said decree before mentioned, and that in compliance therewith the corporation had taken over all of the assets as ordered. This motion was denied, and exceptions were reserved by the appellant.

Counsel for appellant have made 11 specifications of error, but in their brief they have argued and relied on but 2, and the court will therefore only consider those 2, which may be summarized as follows:

(1) That the lower court had no jurisdiction to try the case after the corporation was made plaintiff, since the matter in dispute was less than the sum of $3,000.

(2) That the seed became the property of the receiver when shipped at Portia, and that the quality of the seed when shipped, not the condition when received, controlled.

[1] 1. Defendant urges that the court did not have jurisdiction of the matters in controversy at the time of the trial. The receiver filed his petition as ancillary to the suit under which he was appointed. It is settled law that a federal court has jurisdiction of an ancillary suit by its receiver, without regard to the citizenship of the parties or the amounts involved, and that any suit by a receiver in winding up the affairs of a receivership, or for the collection of assets, or in defense of the property in his hands as receiver, is to be regarded as ancillary to the main suit, and is cognizable in the federal court, regardless either of citizenship or the amount in controversy. Wilson v. K. C. Light Co. (D. C.) 300 F. 185, and authorities there cited. White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67; Kelley v. Gill, 245 U. S. 116, 38 S. Ct. 38, 62 L. Ed. 185; Rose's Fed. Jur. (3d Ed.) 417, 418.

[2] 2. It is contended by the defendant that the action abated upon the entry of the decree of June 26, 1926. In that decree the receiver was ordered to turn over to the corporation possession of all its property which was in his possession, and also to turn over to it the management and control of the business. However, the receiver was not discharged by the decree, and it was expressly provided by section 7 of the decree as follows:

"Should there be any property now properly belonging to the receiver, and which should hereunder have been conveyed and delivered to the National Corporation, which shall not be delivered as by right it should have been, there is hereby vested in the said National Corporation full right and title to sue for and recover the same in this court in this cause, and jurisdiction to that end is hereby specifically retained."

Again, section 9 of the decree provides for the corporation to be "substituted" for the receiver in all suits where he was defendant and be "joined" with him in all suits where he was plaintiff. It thus appears that the lower court retained jurisdiction of this suit by the express terms of the decree.

Moreover, it is a rule: "A fortiori an action by or against a receiver will not abate because of an order of the court restoring the property to the possession of the corporation, but not discharging the receiver." Volume 1, C. J. under the head of "Abatement and Revival," § 232, pp. 147, 138, and authorities there cited.

In Cowen v. Merriman, 17 App. D. C. 186, the court held that an order of the Supreme Court of the District of Columbia, sitting as an equity court, passed in a cause in which receivers of a railroad company were appointed, directing the railroad property to be returned to the possession of the company, but not finally discharging the receivers, would not abate an action previously commenced on the law side of the court against the receivers, for the negligent kill-

ing of plaintiff's intestate, but such action might proceed to judgment notwithstanding such order.

We think the action was not abated by the decree in question.

[3] 3. The main question to be decided is: Was the cottonseed plaintiff's property or defendant's property when placed on board the cars and shipped from Portia?

The evidence bearing upon that question does not seem to be conflicting. Gibson owed the National $5,000, borrowed money, represented by a note, and agreed verbally with Pattison, manager of the Jonesboro mill, to ship five cars of "good, sound, dry, clean cottonseed" at $40 per ton, f. o. b. cars, proceeds to be applied to the payment of the note, settlement to be based on mill weights. This contract was reduced to writing and was signed by Gibson on September 21, 1925. Prior to the signing of the written contract, Gibson had a telephone conversation with James Roberts, manager of the Dixie mill, in Memphis, in which defendant had stated that he wanted to have the proceeds of these five cars applied to the payment of his note. Roberts agreed to this, and had the receivers write to Mr. Gibson to that effect. This letter crossed in the mails a letter written by Gibson to the Dixie Cotton Oil Company on September 22d, which letter was mainly in regard to a car of seed Gibson had sold to Roberts over the telephone on September 21st, for delivery to the Dixie mill, and which Roberts had agreed might be shipped to shipper's order, sight draft, with bill of lading attached. This sale had no connection with the contract made with Mr. Pattison some days before for the delivery of five cars of seed, proceeds to be applied to the payment of Mr. Gibson's $5,-000 note. This is shown by the last sentence of the letter which reads as follows: "Kindly call me up as soon as you can take seed at Jonesboro, and I will ship the five cars in there that I sold you yesterday over the telephone."

This letter reached Mr. Roberts on September 24th, and Mr. Gibson had another telephone conversation on the same date, as shown by Mr. Roberts' letter of that date, which reads as follows: "We have yours of the 22d, and have just talked to you over the phone. You may feel assured that I am going to take care of your interest. I had the receivers write you a letter yesterday stating that the cars you care to ship in on open bill of lading to us would be applied against your note now held at Jonesboro, so that it would relieve any undue anxiety on your part that the funds would not reach the proper source. * * *"

Mr. Roberts' letter was received by the defendant on September 25th, and on that date he wrote Mr. Roberts as follows: "I am in receipt of your letter of the 24th and I note very carefully what you have to say in regard to shipment of cottonseed to you, and I would like the best in the world to ship you every seed I have got; but I do not want to take a chance on getting a car of seed tied up over there and having trouble over there. I know very well you would not intentionally get me into any trouble, but you have got a bunch around you; some of them would do anything. I wish you were back at Jonesboro running your Roberts Cotton Oil Company. I believe you would make more money by doing so. If I ship any seed in there, I feel that you should get an order from court instructing you to accept the seed and apply them on the note which you hold of mine. Now, if you will do this, and mail me a copy of the order, I will pay that note off, just as soon as it quits raining, with shipments of cottonseed. I would be very glad indeed to hear that you were out of the hands of the receivers and everything straightened up as it should be. Let me hear from you further in regard to this order, and I will start cottonseed to you. You understand my position in this matter. I am not afraid of you. If you were the only man I had to deal with over there, I would take your word, or do anything in the world I could do for you; but there are so many mixed up in this company of yours that you can't tell what one day will bring forth, and I am sorry, too, and hope you will get straightened out.

"Your friend,       Jno. K. Gibson."

Mr. Roberts did not get an order of court instructing him to accept the seed and apply them on the note, as was requested by the above letter, and defendant shipped another car of seed, C. N. 322,555, consigned to shipper's order, with sight draft attached to bill of lading. Mr. Roberts took up the draft, although the seed had not arrived, and on September 29th wrote defendant as follows: "It is perfectly right, Mr. Gibson, for you to draw on us. There is no criticism to offer, except that we have orders from the receiver to unload our seed before paying for them; but in this case I am making this concession."

On October 1, 1925, the defendant shipped two cars of cottonseed from Portia, Ark., to Memphis, consigned to himself, and drew two drafts on the plaintiff, to which unindorsed bills of lading were attached. It conclusively appears from the evidence in this case that the

appellant, Gibson, did not ship the two cars in question to be applied upon his $5,000 note, according to his previous arrangement; but, on the contrary, it conclusively appears that the two cars in question were shipped by him on an unindorsed bill of lading by which the cars were consigned to himself, with sight drafts attached, for the purchase price of the goods. These drafts were paid upon presentation.

It thus appears that the plaintiff did not ship or apply these cars upon his $5,000 note, but shipped them on a cash basis and received the cash. Where goods are shipped, consigned by bill of lading to the seller, or his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods. Where a seller ships goods consigned to himself, with sight draft for the purchase price attached to the bill of lading, it shows an intention to retain the title and possession of the property in himself until the draft is paid. The law on this subject is stated as follows in 35 Cyc. 332:

"b. *Consignment to Seller or His Order.* —Where goods are shipped and by the bill of lading or shipping receipt are deliverable to the seller or his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods, even though the shipment is in care of the buyer. But the evidence afforded by the mode of shipment as to the seller's intention is not conclusive, and the property in the goods will be held to have passed to the buyer if such appears to have been the intention of the parties, as for instance where the person who is apparently the seller is in fact the buyer's agent in the transaction, or the goods are shipped for the account and at the risk of the buyer. But on the other hand, even in such cases an intention that the property shall not pass may appear from other circumstances and should be given effect."

"d. *Bill of Lading with Draft Attached.* —If where there is a consignment to the seller, his agent, or order, the bill of lading is forwarded to the seller's agent with draft attached to be delivered to the buyer on payment, the seller thereby manifests an intention to reserve the property in the goods, and the property does not pass until the draft is paid. And even when the buyer is named as consignee, if the bill of lading with draft attached is sent to the seller's agent or bank for collection the property in the goods is reserved and does not pass to the buyer until payment. A different intention may, however, be indicated by the circumstances of the transaction and will of course control, but an intention to pass the property will not be inferred from the delivery of an invoice to the buyer."

See authorities there cited.

There were no circumstances in this case which would indicate that it was not the intention of the seller, Gibson, to retain the possession and title to the goods until the draft which was attached to the bill of lading, was paid. Indeed, the defendant testified repeatedly that he intended to reserve the title and possession until his drafts were paid. It conclusively appears that the title to the possession of the goods was in Gibson when the goods left Portia, and until the bill of lading was delivered to the receiver, and the draft was paid by him.

So, the property being at the time it was delivered to the receiver in a damaged and spoiled condition, contrary to the agreement to deliver "good, sound, dry, clean cottonseed," the plaintiff's right to recover conclusively appears. The amount of the damage is not disputed.

We find no reversible error, and the judgment of the lower court is affirmed.