**HANNA et al. v. BRICTSON MFG. CO. et al.**
No. 9478.

Circuit Court of Appeals, Eighth Circuit.
Nov. 30, 1932.

Rehearing Denied Jan. 13, 1933.

William Ritchie, Jr., of Omaha, Neb. (David A. Fitch, of Omaha, Neb., Holton Davenport and G. B. Braithwaite, both of Sioux Falls, S. D., A. C. R. Swenson and Robert J. Webb, both of Omaha, Neb., and Clarence E. Talbott, of Winner, S. D., on the brief), for appellants.

M. E. Culhane, of Minneapolis, Minn., for appellees R. A. Bielski and others.

R. A. Bielski and D. S. Elliott, both of Sioux Falls, S. D., and Frank L. Weaver, and William M. Giller, both of Omaha, Neb., for appellees Martin Engebretson and R. A. Bielski.

Frank L. Weaver and William M. Giller, both of Omaha, Neb., for appellees Culhane, Weaver, and Giller.

H. V. Mercer, of Minneapolis, Minn., for appellees Ole A. and Helen S. Brictson and Brictson Mfg. Co.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

The appellants were plaintiffs in the court below and the appellees defendants, and they will be so referred to in this opinion.

The plaintiff Doherty is the receiver of the Brictson Manufacturing Company, appointed by the circuit court of Tripp county, S. D., in quo warranto proceedings in which the charter of that company was canceled. The other plaintiffs are stockholders.

The defendants are: The Brictson Manufacturing Company, Ole A. Brictson, majority stockholder, his wife, Helen, and Michael E. Culhane, Frank L. Weaver, and William M. Giller, attorneys (plaintiffs in equity case No. 312, S. D.) who have appeared ostensibly on behalf of the company in various actions; Olaf Eidem, an attorney and supposed creditor who filed an involuntary petition in bankruptcy in the United States District Court for the District of South Dakota against the company; R. A. Bielski, who was appointed receiver by that court in equity case No. 312, S. D., wherein a decree pro con-

fesso establishing a lien against the company in favor of Culhane, Weaver, and Giller was entered; and Martin Engebretson, who was appointed trustee in the bankruptcy proceeding initiated by Eidem, bankruptcy case No. 3228, S. D.

The complaint sets up two causes of action.

The allegations of the first are as follows: Ole A. Brictson, since the organization of the defendant company, has held the majority of the voting stock. For several years prior to the dissolution of the company, he and his wife Helen were the only persons actually acting as directors or officers of the company. They have not operated the business since September, 1921. Brictson has claimed the right to collect $10,000 a year from the assets of the company since September, 1921, and his wife, during the same period, has claimed large sums from the company for salary and rents. They have been attempting to secure personal possession and control of the assets and funds of the company in order to appropriate the funds to themselves in satisfaction of their fictitious claims. Since September, 1921, the defendants Culhane, Weaver, Giller, and Eidem have appeared in various legal proceedings, ostensibly on behalf of the company, but in fact on behalf of the defendants Brictson, in efforts to secure funds and property of the company, so that they might apply them to the payment of the pretended claims of the Brictsons. To prevent such misapplication of funds, the state of Nebraska has successfully prosecuted quo warranto proceedings against the company, and on February 16, 1924, the district court of Douglas county, Neb., entered a decree of ouster and appointed three trustees to administer the estate of the company in Nebraska, which they are now doing. On May 10, 1928, similar proceedings were instituted by the state of South Dakota in the circuit court of Tripp county, S. D. The plaintiff Doherty was first named temporary receiver by that court. On October 5, 1929, that court entered a decree forfeiting the charter of the company and appointing Doherty permanent receiver of the company for the purpose of winding up its affairs. Before the assets of the company were turned over to the trustees in Nebraska, the defendants Weaver, Giller, and Culhane had claimed fees of $30,000 due them from the company, and had asserted that they had a lien upon the assets of the company for such fees. As a result of litigation in the United States District Court for the District of Nebraska, they were denied a

lien, and the decree of that court was affirmed here in Culhane v. Anderson, 17 F.(2d) 559. Subsequently Culhane, Weaver, and Giller filed suit against the company in the United States District Court for the District of Nebraska, asking for $51,000 in fees. That claim was disallowed. In spite of these judgments and decrees, the defendants Weaver, Giller, and Culhane filed equity suit No. 312, S. D., in the United States District Court of South Dakota, asking for a decree that they were entitled to $51,000 for fees against the company, that that sum be declared a lien on the company's assets, and that a receiver be appointed to enforce the lien. Equity suit No. 312, S. D., was commenced after a conference with the defendant Olaf Eidem, and was pressed to judgment with the acquiescence of Ole A. Brictson as a part of a scheme of the Brictsons, Culhane, Weaver, Giller, and Eidem to create a fictitious act of bankruptcy, and thus to defeat the effect of the quo warranto decrees in Nebraska and South Dakota and the orders of the United States District Court of Nebraska with respect to said fees and liens. Subpœna in equity suit No. 312, S. D., was served on George N. Breed, a supposed director of the company, a 72 year old man living on a farm, who was not at the time a director or officer, and who had been so ill for ten months prior to service of subpœna that it had been impossible for him to move from one place to another without assistance, and who was so little interested in the matter that he did not advise any officers of the Brictson Company of the service of notice. He had been a director, having been given one share of stock by Brictson in 1923. He had attended one meeting of the board of directors in 1923, but since that time had received no notice of any directors' meeting, and had attended none prior to September 2, 1929. In default of an answer by the company, Weaver, Giller, and Culhane obtained a decree pro confesso for $51,000, a lien upon the assets of the company, and the appointment of the defendant R. A. Bielski as receiver of the company for the purpose of enforcing this lien.

The second cause of action includes the pertinent allegations of the first cause, and recites that: In furtherance of the scheme to procure the assets of the company for themselves, the defendants Brictson executed a pretended assignment in the name of the company to themselves of certain assets of the company, and subsequently in the United States District Court for the District of Nebraska sought to enforce said assignment. The assignment, however, was held invalid by that court. The defendant Olaf Eidem filed a petition in involuntary bankruptcy against the company (bankruptcy case No. 3228, S. D.), alleging two acts of bankruptcy: (1) The pretended assignment to Helen S. and Ole A. Brictson, and (2) the appointment of the receiver in equity case No. 312, S. D. Service in the bankruptcy matter was also had on Breed, under like circumstances and with like results as in equity case No. 312, S. D. An adjudication in bankruptcy was thereby obtained on default. In furtherance of the purpose to divert the assets of the company to the Brictsons, the Brictsons, Weaver, Giller, Culhane, and Eidem have filed numerous and fictitious claims in the bankruptcy proceedings, have secured the appointment of the defendant Martin Engebretson as trustee in bankruptcy, and controlled his actions. The plaintiffs believe that said Engebretson is a relative of Brictson. Engebretson is friendly to the other defendants, and as trustee in bankruptcy has employed Weaver, Giller, and Culhane to represent him as attorneys. None of the filed claims of the defendants are valid. Unless the proceedings in bankruptcy case No. 3228, S. D., are set aside and further proceedings restrained, the defendants will appropriate for themselves all the assets of the Brictson Manufacturing Company.

The plaintiffs ask for a decree vacating the decree in equity suit No. 312, S. D., vacating the adjudication in bankruptcy in bankruptcy case No. 3228, S. D., restraining the defendants from enforcing the adjudication, requiring the trustee in bankruptcy to account to the plaintiff Doherty for all funds belonging to the company in the possession of the trustee, and for such other relief as they may be entitled to.

The court entered an order providing for the service of subpœnas upon the nonresident defendants, wherever they might be found. Service was had upon the defendants Brictson, the company, and Culhane, in Minnesota; upon Weaver and Giller in Nebraska; and upon the other defendants in South Dakota.

None of the defendants put in an answer. Engebretson, Bielski, and Eidem moved to dismiss the bill on the following grounds: That there was want of equity; that the court had no jurisdiction to hear the suit; that there was a misjoinder of causes of action, a defect of parties plaintiff, and a defect of parties defendant. Culhane, Weaver, and Giller appeared specially and moved to quash the service of subpœnas on the ground

that the court had acquired no jurisdiction of them. The company moved to dismiss the bill on the following grounds: That the first cause of action was invalid for want of equity; that it was not joint as to the plaintiff stockholders and the plaintiff Doherty, within equity rule 26, or at all; that the plaintiffs did not have an interest entitling them to the relief prayed for; that the liability alleged could not be asserted against all the defendants; that the court, as a court of equity, had no jurisdiction to set aside the adjudication in bankruptcy; that the second cause of action was invalid, was not joint as to the plaintiffs, and the liability alleged could not be asserted against all the material defendants; and that the plaintiffs had no interest entitling them to bring the second cause of action. The Brictsons appeared specially, and objected to the jurisdiction of the court on the ground that there was no proper service of subpœnas upon them.

The plaintiffs were permitted to amend the complaint by alleging that the plaintiff receiver brought the suit pursuant to authority granted by the court appointing him. The plaintiffs then moved for permission to file an amended and substituted bill of complaint containing this additional allegation: "That this action is maintained by these complainants to assert the rights of the corporation, The Brictson Manufacturing Company, now dissolved and of all parties in interest in said corporation, against the decrees and proceedings herein complained of; that the complainant stockholders join the complainant Windsor Doherty in maintaining this action by the express authority of said Circuit Court of Tripp County, South Dakota, conferring upon them the right to enforce the causes of action herein set forth jointly with said receiver."

The defendants objected to the filing of the amended complaint. The court sustained the motions of the Brictsons to quash the service upon them; held that the service upon Culhane, Weaver, and Giller was sufficient for the reason that they were parties to equity suit No. 312, S. D.; dismissed the complaint on the ground that there was a misjoinder of parties plaintiff, that the Brictsons were not proper parties defendant, and that there was a misjoinder of causes of action; and denied permission to file the amended complaint.

The plaintiffs appealed from these various orders, and the appeals were consolidated. It is the contention of the plaintiffs that there was no misjoinder of causes of action, no

misjoinder or defect of parties plaintiff or defendant, that the court acquired jurisdiction of the Brictsons by the service of the subpœnas upon them outside of the district of South Dakota, and that the court should have permitted the complaint to be amended.

The controversy here involved is the same controversy as that referred to in the opinion of this court in Whittaker v. Brictson Mfg. Co., 43 F.(2d) 485. Those interested in setting aside the decree in equity case No. 312, S. D., and the adjudication in bankruptcy had attempted to intervene in those proceedings for the purpose of accomplishing that result, and the lower court and this court had held that, because of equity rule 37 (28 USCA § 723), that could not be done. This court, however, said [page 488 of 43 F.(2d)]: "The grave charges made in these various motions to set aside the judgments and in the proposed petitions of intervention are of such nature that it would seem some court of competent jurisdiction should pass thereon."

It also said [page 491 of 43 F.(2d)]: "Appellants are not without remedy in an independent action to seek to set aside the judgments for want of jurisdiction, fraud, or other grounds of equitable relief."

And: "While we feel compelled in view of Equity Rule 37 to sustain the judgment of the trial court in both cases, we do so without prejudice to the right of appellants to bring original actions to set aside either or both of these judgments or decrees."

In a sense, then, this court suggested, if it did not actually invite, the bringing of a proper action or actions to test the validity of the decree in equity and the adjudication in bankruptcy complained of.

There are, as we see it, four main questions to be determined:

(1) Was the court justified, in view of the fact that stockholders had joined with the receiver, in dismissing the entire bill?

(2) Was the court justified in dismissing the bill because the plaintiffs had joined a cause of action to set aside a decree in equity with a cause of action to vacate an adjudication in bankruptcy?

(3) Was the fraud alleged of such a character as to justify a court in granting the relief prayed for?

(4) Was the service upon the Brictsons sufficient?

1. The receiver was the only necessary party plaintiff. A decree in his favor would have inured to the benefit of the stockholders, and a decree against him would have

been binding upon them because he was their representative. We see, however, no logical reason why the plaintiff stockholders might not join with the receiver as plaintiffs. They had something more than a mere casual interest in the affairs of the corporation, which had no business and was in the process of dissolution. They were vitally interested in the question whether the assets were to be used for the benefit of the corporation and for their benefit, or for the benefit of the Brictsons and certain lawyers. The presence of the stockholders as parties in the case in no way prejudiced any of the defendants. They asserted no rights separate or distinct from those of the receiver, and merely joined with him for the benefit of all stockholders in asking that the decree and the adjudication in bankruptcy be set aside. By their amended complaint they offered to show that what they did was done with the authority of the court which had appointed the receiver and had authorized the suit.

Equity rule 37 (28 USCA § 723) provides: "All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when anyone refuses to join, he may for such reason be made a defendant."

Klein v. Peter, 284 F. 797, 29 A. L. R. 1497 (C. C. A. 8), and Reagan v. Midland Packing Co., 8 F.(2d) 954 (C. C. A. 8), are authority for the proposition that a receiver is a necessary party, and that stockholders and creditors may not bring separate suits to enforce the rights of a corporation which is in receivership. There is language in those cases which indicates that the right of the receiver to bring such suits is sole and exclusive, but we do not understand that language as necessarily meaning that in a case such as this stockholders may under no circumstances be permitted to join with the receiver as plaintiffs.

That participation by stockholders or creditors in a suit by a receiver may be denied is indicated by Thomasson v. Guaranty Trust Co. of N. Y., 159 F. 126 (C. C. A. 7); Guaranty Trust Co. of N. Y. v. Chicago, M. & St. P. R. Co., 15 F.(2d) 434 (D. C.); Acme White Lead & Color Works v. Republic Motor Truck Co., 285 F. 88 (D. C.); Continental & C. T. & S. Bank v. Allis-Chalmers Co., 200 F. 600 (D. C.); Federal Crude Oil Co. v. Yount-Lee Oil Co. (Tex. Com. App.) 35 S.W.(2d) 111.[1]

Cases which indicate that such a joinder as is here involved is permissible are the following:

Adler v. Seaman, 266 F. 828 (C. C. A. 8), certiorari denied 254 U. S. 655, 41 S. Ct. 218, 65 L. Ed. 460. Here a stockholder asked for the appointment of a receiver, charging waste and maladministration. A bondholder brought separate suit, asking for a receivership. The defendants joined in the request of the bondholder's suit, and a receiver was appointed. The stockholder asked for a consolidation of the two cases.

This court said (pages 837, 839 of 266 F.):

"There is a clear way in which the two suits may become related, and it is the only way. That is by making the Adler receiver a party to the Seaman suit. The court can order him to intervene as party plaintiff and promote the prosecution of the suit. * * *

"To repeat, the proper procedure was, by leave of court, to bring the receiver into the Seaman suit as a party, so that the receiver may prosecute the suit, if deemed advisable by the court, or may, as party defendant, be bound by the adjudication."

The result of this procedure would be to allow the joinder of a stockholder and a receiver.

Gibson v. Vinton, 21 F.(2d) 168 (C. C. A. 8). This was a damage suit instituted by the receiver of a corporation. During the progress of the suit, the lower court had allowed the corporation to be made a party plaintiff. It appears that later, by stipulation, the corporation was substituted for the receiver.

National Electric Signaling Co. v. Telefunken Wireless Tel. Co. of United States, 208 F. 679 (C. C. A. 3). This was a suit in equity brought by a corporation and its receiver. The court discussed the right of the receiver, appointed since the commencement of the litigation, to come into the suit, but said nothing as to the continued joinder.

Keith Lumber Co. v. Houston Oil Co. of Texas, 257 F. 1 (C. C. A. 5). This was a suit by a corporation and its receiver. Nothing was said about this joinder.

Kelly v. Dolan, 218 F. 966 (D. C.). Here the court said (page 971 of 218 F.): " * * *

[1] See, also, 56 S.W.(2d) 56.

The corporation, receiver, and the stockholder plaintiff, all of whom are citizens of one state, are properly, logically, and naturally arrayed against the individual defendants here, all of whom are citizens of another state."

Houston v. Redwine, 85 Ga. 130, 11 S. E. 662. This was an action started by the treasurer of a corporation. A receiver was appointed pending the litigation, and it was held that he was entitled to be a party in the treasurer's suit.

Battershall v. Davis, 31 Barb. (N. Y.) 323. Here stockholders joined with the receiver in an application for authority to sell assets.

Attorney General v. North America Life Ins. Co., 77 N. Y. 297, 299. Here it was said: "The receiver as the officer of the court, represented the policyholders and other creditors of the company. But it was competent for the court in the exercise of its equitable jurisdiction to permit parties interested in the administration of the property and assets of the corporation to appear and be made parties to proceedings taken by or against the receiver, by which their rights might be affected. It was in the discretion of the court to allow the policyholders who stood in the position of cestuis que trust, to appear and represent their own interests. There is in strictness no suit to which the policyholders can be made parties."

Michel v. Betz, 108 App. Div. 241, 95 N. Y. S. 844. This was a suit by a stockholder. The court said (page 849 of 95 N. Y. S., 108 App. Div. 241): "I think, therefore, that the action in this form cannot be maintained without the presence of either the receiver or directors of the corporation as either parties plaintiff or defendant, and that for that reason the demurrer should have been sustained."

Pacific Fire Ins. Co. v. John E. Morris Co. (Tex. Civ. App.) 1 S.W.(2d) 348. This was a suit upon an insurance policy. A stockholder owning 98 per cent. of the stock was allowed to intervene as party plaintiff.

While the authorities indicating that stockholders may or may not join as plaintiffs, in aid of a receiver in such an action as this, are unsatisfactory, there appears to be no practical reason why they may not join; and the equity rule, which we think should be liberally construed, seems broad enough to permit it.

But, even if it were true, as defendants contend, that the stockholders might not join as parties plaintiff, that would not justify a dismissal of the bill. It would not constitute a defect of parties, but merely an excess or misjoinder of parties. Board of Trustees, etc., v. Oller, 226 Ky. 89, 10 S.W.(2d) 615; Star Furniture Co. v. Carolina & N. W. R. Co., 195 N. C. 636, 143 S. E. 242; Bruffarts v. Ober, 48 N. D. 997, 188 N. W. 174; Okmulgee Supply Co. v. Rotman, 144 Okl. 293, 291 P. 1; Mader v. Plano Mfg. Co., 17 S. D. 553, 97 N. W. 843.

There are cases holding that a misjoinder of parties plaintiff is fatal to the bill. De Croisset v. Vitagraph Co. of America, 262 F. 100, page 102 (C. C. A. 2), in which the court said: "Misjoinder of parties plaintiff, having no interest and to whom no relief can be granted, renders the bill of complaint multifarious and devoid of equity." Tully v. Triangle Film Corp., 229 F. 297 (D. C.). See, also, Mexican Gulf Oil Co. v. Compania Trans. De Petroleo, 281 F. 148 (D. C.); Summerlin v. Fronteriza Silver M. & M. Co., 41 F. 249 (C. C. W. D. Tex.); Mosaic Templars of Amer. v. Flanagan, 22 Ala. App. 377, 115 So. 860.

However, a dismissal of a complaint because of an excess of parties plaintiff cannot be justified by either logic or common sense. It is the duty of the courts to dispose of controversies after trial and upon their merits whenever possible. The modern tendency of both the bench and the bar is to brush aside technicalities and to bring about a disposition of suits, not upon some technical rule of pleading and practice incomprehensible to the lay mind, but upon the evidence and in accordance with the law. If a court has before it the necessary parties to enable it to dispose of a case of which it has jurisdiction, it is of little consequence how many other persons may be present as nominal parties. They can be ignored or eliminated at any stage of the proceedings. If they are entitled to no relief, they will receive none.

Aside from the very obvious practical reasons which require the conclusion that the suit of the receiver be not dismissed because of the presence of the stockholders as plaintiffs, the following cases may be cited in support of it: Aaron v. Security Inv. Co., 51 S. D. 53, 211 N. W. 965; Comm. & Savings Bank of Sioux Falls v. Erdman, 50 S. D. 97, 208 N. W. 582; Mader v. Plano Mfg. Co., 17 S. D. 553, 97 N. W. 843, supra; State ex rel. Havner v. Des Moines Union Stock Yards Co., 197 Iowa, 987, 197 N. W. 1009, 35 A. L. R. 487; Star Furniture Co. v. Carolina & N. W. R. Co., 195 N. C. 636, 143 S. E. 242; Fant v. Brissey, 143 S. C. 264, 141 S. E. 450; Gibert v. Glenn, 159 S. C. 135, 156 S. E. 325;

Canfield v. Newman (Tex. Civ. App.) 265 S. W. 1052; Virginia Hot Springs Co. v. Hoover, 143 Va. 460, 130 S. E. 408; Bjorkquist v. Reuteman, 191 Wis. 173, 210 N. W. 361.

There are remedies, other than the dismissal of the entire bill, available for the elimination of surplus parties: Special demurrer (Willingham, W. & C. v. Glover, 28 Ga. App. 394, 111 S. E. 206); dismissal as to misjoined parties (Bruffarts v. Ober, 48 N. D. 997, 188 N. W. 174); striking or disregarding unnecessary parties by the court (Lee v. Scriver, 143 Minn. 17, 172 N. W. 802; Village of Warsaw v. Pavilion Nat. Gas Co. [Sup.] 184 N. Y. S. 327; Pendergraph v. Am. Ry. Exp. Co., 178 N. C. 344, 100 S. E. 525); amendments to pleadings (Beaudette v. Cavedon, 50 R. I. 140, 145 A. 874); motion to strike (Okmulgee Supply Co. v. Rotman, 144 Okl. 293, 291 P. 1; Board of Trustees, etc. v. Oller, 226 Ky. 89, 10 S.W.(2d) 615).

Our conclusion is that the lower court was not justified in dismissing the entire bill because of the presence of the stockholders, and that they should have been permitted to continue as parties plaintiff.

2. The question whether there was a misjoinder of causes of action depends upon the right or power of a court sitting in equity to vacate an adjudication in bankruptcy made by the same court sitting as a court of bankruptcy.

That the court's equity jurisdiction is a thing entirely separate and apart from its jurisdiction in bankruptcy seems obvious.

Section 2 of the Bankruptcy Act (44 Stat. 662) provides: "That the courts of bankruptcy as hereinbefore defined, namely, the district courts of the United States in the several States, the Supreme Court of the District of Columbia, the district courts of the several Territories and possessions to which this Act is, or may hereafter be, applicable, and the United States Court in the District of Alaska, are hereby made courts of bankruptcy, and are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms, as they are now or may be hereafter held, to (1) adjudge persons bankrupt. * * *" U. S. C. tit. 11, § 11 (11 USCA § 11).

Section 23a of the act provides: "The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants." U. S. C. tit. 11, § 46 (a), 11 USCA § 46 (a).

That the jurisdiction of courts of bankruptcy is exclusive with respect to all questions pertaining to bankruptcy and to the administration of insolvent estates in bankruptcy is well settled. 1 Remington on Bankruptcy (3d Ed. 1923) § 20, p. 44; 3 Hughes, Federal Practice (1931) § 1425, from which we quote the following: "In utilizing the federal District Courts as courts of bankruptcy, instead of creating a new organization, the courts of bankruptcy are none the less separate and distinct courts. As such they exercise the powers and jurisdiction in bankruptcy proceedings quite separate and distinct from the powers and jurisdiction inhering as District Courts." New Lamp Chimney Co. v. Ansonia B. & C. Co., 91 U. S. 656, 661, 23 L. Ed. 336; In re Watts & Sachs, 190 U. S. 1, 27, 23 S. Ct. 718, 47 L. Ed. 933; U. S. Fidelity & Guar. Co. v. Bray, 225 U. S. 205, 217, 32 S. Ct. 620, 56 L. Ed. 1055; Isaacs, Trustee, v. Hobbs T. & T. Co., 282 U. S. 734, 737, 51 S. Ct. 270, 75 L. Ed. 645; Straton v. New, Trustee, 283 U. S. 318, 321, 51 S. Ct. 465, 75 L. Ed. 1060; United States v. Wood, 290 F. 109, 111 (C. C. A. 2); Roger v. J. B. Levert Co., 237 F. 737, 742 (C. C. A. 5); In re Diamond's Estate, 259 F. 70, 73 (C. C. A. 6); State of Missouri v. Angle, 236 F. 644, 652 (C. C. A. 8).

Exclusive jurisdiction of the bankruptcy court cannot be surrendered. U. S. Fidelity & Guar. Co. v. Bray, 225 U. S. 205, 218, 32 S. Ct. 620, 56 L. Ed. 1055; In re Diamond's Estate, 259 F. 70, 73 (C. C. A. 6), supra.

The attempts of other courts to interfere with the jurisdiction of the bankruptcy courts have been consistently resisted. New Lamp Chimney Co. v. Ansonia Brass & Copper Co., 91 U. S. 656, 23 L. Ed. 336, supra. Graham et al. v. Boston, H. & E. R. Co., 118 U. S. 161, page 178, 6 S. Ct. 1009, 1018, 30 L. Ed. 196, in which case the court said: "The circuit court, as to these matters, correctly held these propositions: An adjudication of bankruptcy, made by a district court having jurisdiction of the bankrupt, cannot be impeached collaterally by any person who was

a party to the bankruptcy proceedings. Until vacated in the manner prescribed by the bankruptcy act, it is binding upon all the parties to it. The district court is always open for a re-examination of its decrees in an appropriate form."

U. S. Fidelity & Guar. Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055, supra, which involved a suit wherein the plaintiff asserted an equitable right to have a fund in the hands of the trustee in bankruptcy applied to certain labor claims for which the plaintiff, as surety for the bankrupt, was liable. The court referred to section 2 of the Bankruptcy Act and the specific powers therein enumerated, to section 23a, and to section 57k [11 USCA §§ 11, 46 (a), 93 (k)], and said (page 217 of 225 U. S., 32 S. Ct. 620, 625): "We think it is a necessary conclusion from these and other provisions of the act that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration. * * * "

The court then pointed out that the allegations of the bill intended to invoke reconsideration and modification of the referee's order allowing certain claims as preferred claims for labor and material, a determination of the right of the holders of those claims to have them paid at their face value, an inquiry into the charge that the trustee had been speculating in claims against the estate, and a direction that claims for labor and materials be accorded a preference, and said (page 218 of 225 U. S., 32 S. Ct. 620, 625): "These matters are rightly subjects for proceedings in bankruptcy, and therefore fall within the exclusive jurisdiction of the court of bankruptcy. A distinct purpose of the bankruptcy act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks."

See, also, Norris' Case, 18 Fed. Cas. page 317, No. 10304 (D. C.). Gibbons v. Dexter Horton T. & S. Bank, 225 F. 424 (D. C.). This involved a bill in equity to set aside an adjudication of bankruptcy and praying for a resale of the bankrupt's property. The court, among other things, said: "The plaintiff cannot now be permitted to relitigate matters which have been presented or are undisposed of by the bankruptcy court. It would present an anomalous situation if a court, sitting as a bankruptcy court, could administer an estate and adjudicate the rights of contending parties, if, upon adverse ruling, the court, as a court of equity, would entertain a bill of the defeated parties to review the bankruptcy proceeding."

It was held by the Ninth Circuit in Moore v. Scott, 55 F.(2d) 863, and in a companion case of the same name, 55 F.(2d) 866, that the District Court, sitting as a court of equity, is without power to fix the compensation of a receiver appointed by it, where the same court, sitting in bankruptcy, had adjudged the corporation bankrupt. On page 865 of 55 F.(2d) the court said: "To say that the judge of the court sitting in equity could protect the rights of all parties as well as could be done if he were sitting in bankruptcy is beside the question. Congress has provided for the administration of bankrupt's estates in the bankruptcy court; and after a bankruptcy has supervened, no other court has the power or authority partially to administer or to deplete the estate, by disposing of or impressing a lien upon it or upon any part thereof—valid prior liens, of course, excepted—not even in favor of its own receivers."

In a similar situation in the case of Silberberg v. Ray Chain Stores, Inc., 54 F.(2d) 650, 653 (D. C.) it was said: "It has been suggested that the judge, sitting as a chancellor, should, by reason of his familiarity with the facts, and his superior knowledge as to the value and extent of the services of the receivers and their counsel, fix the fees and permit their payment, turning the balance over to the trustee in bankruptcy. This would seem sound in equity as well as wise in the light of the economic problem involved, but here we are dealing with an act of Congress, the authority for which is found in the national Constitution, and the effect of it is to limit the free exercise of equity powers within the defined limits of the act, nor can comity furnish a basis upon which the bankruptcy court may permit another court to partially administer the estate, since there can be no comity between courts where one of them is vested with sole and exclusive jurisdiction to act." This case was affirmed by the Third Circuit in 58 F.(2d) 766.

See, also, In re Neuburger, Inc., 240 F. 947 (C. C. A. 2); In re Yaryan Naval Stores Co., 214 F. 563 (C. C. A. 6); McKenna v. Randle, 5 Alaska, 590, in which the court said: "The general equity jurisdiction of the United States district court for Alaska is not to be confounded with the equity jurisdiction of the United States court for Alaska in bankruptcy. It is true that these courts have one and the same name, but they were created by separate and distinct acts of Congress (and said acts were passed in pursuance of constitutional powers entirely different from each other). Each court has its own jurisdiction, both in the essential significance of the term 'jurisdiction,' as meaning power, and in the 'territorial extent' of jurisdiction, and each court has its own method of procedure."

So far as we have been able to ascertain from an examination of the cases, the practice in this circuit, when it has been sought to have an adjudication set aside, has been to file a motion for that purpose in the bankruptcy proceedings. See Hart-Parr Co. v. Barkley (C. C. A.) 231 F. 913; Zeitinger v. Hargadine-McKittrick Dry Goods Co. (C. C. A.) 244 F. 719; Missouri Valley Cattle Loan Co. v. Alexander (C. C. A.) 276 F. 266; Ewing v. Forrester Nace Box Co. (C. C. A.) 12 F.(2d) 864.

Our conclusion is that a cause of action to vacate an adjudication in bankruptcy may not be joined with a cause of action to vacate an equity decree.

■ It does not follow, however, that the court below was justified in dismissing the entire bill of complaint.

Equity rule 26 (28 USCA § 723) provides: "The plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant. * * * If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials."

Thus, rule 26 itself impliedly directs a court of equity to dispose of any cause of action stated in the bill which can properly be disposed of. If a bill of complaint contains two causes of action, of each of which the court has jurisdiction, it may order separate trials if such causes of action cannot conveniently be disposed of together. It must necessarily follow that, if two causes of action are joined, of only one of which the court has jurisdiction, it may not dismiss both, but may only dismiss the one that it has no jurisdiction to try.

■ The rule itself does not, of course, extend, or purport to extend, the jurisdiction of a court sitting in equity to causes of action over which it would, in the absence of the rule, have no jurisdiction. See Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 259, 35 S. Ct. 788, 59 L. Ed. 1295.

An attempted enlargement of jurisdiction by including in one bill causes of action over which the court has no jurisdiction has frequently arisen in cases involving the infringement of a patent and unfair competition. The joinder of such causes of action has not been permitted. See Ingrassia v. A. C. W. Mfg. Corp., 24 F.(2d) 703 (C. C. A. 2); C. L. King & Co. v. Inlander, 133 F. 416 (C. C. N. D. Ill.); Benedict v. Hall, 267 F. 1013 (D. C.); Cushman v. Atlantis Fountain Pen Co., 164 F. 94 (C. C. Mass.); Electric Boat Co. v. Lake Torpedo Boat Co., 215 F. 377 (D. C.); Keasby & Mattison Co. v. Philip Cary Mfg. Co., 113 F. 432 (C. C. S. D. N. Y.); Nat. Casket Co. v. N. Y. & B. Casket Co., 185 F. 533 (C. C. S. D. N. Y.); Johnston v. Brass Goods Mfg. Co., 201 F. 368 (D. C.); Gerrard v. Cary, 9 F.(2d) 949 (D. C.); Mecky v. Grabowski, 177 F. 591 (C. C. E. D. Pa.); Craig Demagnetizer & Ink Dryer Corp. v. Static Control Co., Inc., 295 F. 72 (C. C. A. 2).

In Washington-Southern Nav. Co. v. Baltimore & Phila. Steamboat Co., 263 U. S. 629, 635, 44 S. Ct. 220, 222, 68 L. Ed. 480, the court said: "But no rule of court can enlarge or restrict jurisdiction. Nor can a rule abrogate or modify the substantive law. This is true, whether the court to which the rules apply be one of law, of equity or of admiralty. It is true of rules of practice prescribed by this court for inferior tribunals, as it is of those rules which lower courts make for their own guidance under authority conferred."

The rule itself prohibits the joining of any causes of action unless "cognizable in equity."

That the proper course to be followed where a cause of action in equity as to which the court has jurisdiction is joined with a cause of action over which it has no jurisdiction is to dismiss only the latter cause of action is indicated, not only by the equity rule itself, but by the following cases: Schell v. Leander Clark College et al., 2 F.(2d) 17 (C. C. A. 8); Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 35 S. Ct. 788, 59 L. Ed. 1295, supra; Craig Demagnetizer & Ink Dryer Corp. v. Static Control Co., 295

F. 72 (C. C. A. 2), supra; Mecky v. Grabowski (C. C.) 177 F. 591, supra; National Casket Co. v. N. Y. & B. Casket Co. (C. C.) 185 F. 533, supra; Vose v. Roebuck W. S. & W. S. Co., 210 F. 687 (D. C.); Electric Boat Co. v. Lake Torpedo Boat Co. (D. C.) 215 F. 377, supra; Unit Construction Co. v. Huskey Mfg. Co., 241 F. 129 (D. C.).

3. While it appears that the second cause of action was properly dismissed by the court, nevertheless the plaintiffs were entitled to have the court take jurisdiction of the first cause of action, unless, as the defendants claim, the fraud alleged is not of such a character as to justify the setting aside of the equity decree.

So much has been written on the subject of the right of a court of equity to set aside or enjoin the enforcement of unconscionable judgments or decrees for what has been termed "extrinsic fraud," and the cases upon that subject have been so often reviewed by this and other courts, that it would be useless once more to enter into an extended discussion of that subject. See Marine Insurance Co. of Alexandria v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929; Steel v. St. Louis Smelting & Ref. Co., 106 U. S. 447, 1 S. Ct. 389, 27 L. Ed. 226; Pacific R. Co. of Missouri v. Mo. Pac. R. Co., 111 U. S. 505, 4 S. Ct. 583, 28 L. Ed. 498; Johnson v. Waters, 111 U. S. 640, 4 S. Ct. 619, 28 L. Ed. 547; Moffat v. United States, 112 U. S. 24, 5 S. Ct. 10, 28 L. Ed. 623; United States v. Minor, 114 U. S. 233, 5 S. Ct. 836, 29 L. Ed. 110; Arrowsmith v. Gleason, 129 U. S. 86, 9 S. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Hilton v. Guyot, 159 U. S. 113, 207, 16 S. Ct. 139, 40 L. Ed. 95; Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, 43 S. Ct. 458, 67 L. Ed. 719; National Surety Co. of N. Y. v. State Bank of Humboldt, 120 F. 593, 61 L. R. A. 394 (C. C. A. 8); Young v. Sigler, 48 F. 182 (C. C. S. D. Iowa); Chicago, R. I. & Pac. R. Co. v. Callicotte, 267 F. 799, 16 A. L. R. 386 (C. C. A. 8).

In Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, page 421, 43 S. Ct. 458, 464, 67 L. Ed. 719, supra, one of the last cases in the United States Supreme Court dealing with this subject, Chief Justice Taft said: "There has been much discussion as to whether extrinsic fraud is here alleged, and the case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, is cited and numerous other authorities since that case. We do not find ourselves obliged to enter upon a consideration of the sometimes nice distinctions made between intrinsic and extrinsic frauds in the application of the rule, because in any case to justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense. If it does not so appear, then proof of the ultimate fact, to wit, that the decree was obtained by fraud fails. That is the case here."

It is our opinion that, if the plaintiffs succeed in proving what they have alleged with respect to the manner in which and the circumstances under which the decree pro confesso in equity case No. 312, S. D., was obtained, that decree should be vacated. The plaintiffs do not seek a review of irregularities in the formal proceedings leading up to the decree. Their charge is that the decree is the result of the assertion of false claims and liens by persons acting for the Brictsons in an effort to secure for the Brictsons the assets of the Brictson Manufacturing Company, to which they are not entitled, and that jurisdiction to enter the decree was never actually acquired by the court, although it was fraudulently made to appear that the court did have such jurisdiction.

If what the plaintiffs charge is true, the decree was not only an imposition upon those who were entitled to the assets of the Brictson Manufacturing Company, but it was an imposition upon the court as well, and the company and its representatives were clearly prevented from making a full and fair defense.

Cases, some of which are closely analogous to this, are: Farrar v. Consolidated Apex Mining Co., 12 S. D. 237, 80 N. W. 1079; Congdon Hardware Co. v. Consolidated Apex Mining Co., 11 S. D. 376, 77 N. W. 1022; Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422; Pacific Railroad Co. of Mo. v. Missouri Pac. R. Co., 111 U. S. 505, 4 S. Ct. 583, 28 L. Ed. 498, supra. In the last case the court said (page 520 of 111 U. S., 4 S. Ct. 583, 591): "On the admitted allegations of the bill, there was no real defense made in the Ketchum suit, and the present plaintiff was prevented from making that defense by the unfaithful conduct of its solicitor and its directors, and the directors of the Atlantic Company. A case of that kind is one of which a court of equity will take cognizance." National Surety Co. of

N. Y. v. State Bank of Humboldt, 120 F. 593, 61 L. R. A. 394 (C. C. A. 8), supra.

The case of Firestone Tire & Rubber Co. v. Marlboro Cotton Mills, 282 F. 811 (C. C. A. 4), is very similar to this. There the defendant, as plaintiff, instituted an action in the state court. Service was had upon a traveling salesman of the defendant. The salesman forwarded the summons to his branch office. The clerk who received it felt that it had been illegally served and failed to notify the officer in charge of the agency. No responsible officer of the plaintiff had knowledge of the pending action. Judgment by default was entered. Suit was brought to restrain the enforcement of that judgment. The court said (page 815 of 282 F.): "The proceeding instituted in the federal court was not designed to correct errors appearing in the trial of the case in which the judgment was had, nor had it any of the aspects or purposes of a writ of error or an appeal. It was a proceeding by bill in equity to restrain the collection of a final judgment for lack of proper service, and it was therefore, under the circumstances here shown to exist, properly brought in the federal court." Certiorari was denied in 260 U. S. 749, 43 S. Ct. 248, 67 L. Ed. 494.

 4. That the court below was justified in holding that it had no jurisdiction over the Brictsons we have no doubt. They were not necessary parties to the first cause of action. They had not been parties to equity case No. 312, S. D. Service was had upon them outside of the district. It is asserted that they conspired with other defendants in securing the decree pro confesso which is sought to be set aside; but they have a right to contest that assertion, and this suit, so far as the first cause of action is concerned, is as to them not an ancillary, but an original, suit.

 The court was right in holding that it had jurisdiction over the defendants Culhane, Weaver, and Giller. They were parties to equity case No. 312, S. D., and the first cause of action in this suit is to be considered as a continuation of that one, so that service of subpœna within the state upon these defendants was not necessary. Merriam Co. v. Saalfield & Ogilvie, 241 U. S. 22, 30, 36 S. Ct. 477, 60 L. Ed. 868; Leman v. Krentler-Arnold Hinge Last Co., 284 U. S. 448, 454, 455, 52 S. Ct. 238, 76 L. Ed. 389; Cortes Co. v. Thannhauser, 9 F. 226 (C. C. S. D. N. Y.); O'Connor v. O'Connor, 146 F. 994 (C. C. W. D. Tex.); Dickey v. Turner, 49 F.(2d) 998, 1001 (C. C. A. 6).

We think that the court below did not err in denying leave to file the amended bill. It added nothing except the allegation that the stockholders were authorized by the court which appointed the receiver to join with him as plaintiffs on behalf of themselves and other stockholders. If they were not proper parties, such an authorization would not make them such, and if they were proper parties they needed no authority from the court to join in the suit.

It follows from what has been heretofore said that the court should have retained jurisdiction of the first cause of action, of the plaintiffs, and of the defendants Culhane, Weaver, Giller, Bielski, the company, and Eidem, who were either necessary or proper parties to that cause of action; that, in so far as its orders constituted a dismissal of the second cause of action and the elimination of the Brictsons and Engebretson as parties, they were proper.

 It is unfortunate that the court cannot deal with this entire matter in one proceeding and upon one trial. The plaintiffs, however, are entitled to move the court of bankruptcy to vacate the adjudication in bankruptcy upon the grounds asserted in their second cause of action. Stockholders situated as these stockholders are situated have been accorded that right, Zeitinger v. Hargadine-McKittrick Dry Goods Co., 244 F. 719 (C. C. A. 8), supra; and the right of a receiver to make such a motion is well settled, In re Gold Run Mining & Tunnel Co., 200 F. 162 (D. C.); Blackstone v. Everybody's Store, Inc., 207 F. 752 (C. C. A. 1); In re San Antonio Land & Irrig. Co., 228 F. 984 (D. C.); In re Campbell County Hardware Co., 15 F.(2d) 78 (D. C.); Wood v. Natural Soda Products Co., 31 F.(2d) 110 (C. C. A. 9).

That being the case, there would seem to be no practical reason why the plaintiffs might not move the court as a court of bankruptcy to vacate the adjudication and why that motion might not be heard at the same time that the first cause of action is tried.

The orders of the court below are reversed in so far as they constitute a dismissal of the first cause of action and the elimination of the necessary and proper parties to that cause of action. In so far as these orders constitute a dismissal of the second cause of action and the elimination of the Brictsons and Engebretson as parties to the suit, they are affirmed. The case is remanded for further proceedings not inconsistent with this opinion. The costs on appeal will be divided

equally between the appellants and the appellees Culhane, Weaver, Giller, Bielski, and Eidem.